**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA**

**Alexandria Division**

| | |
|---|---|
| **Thomas Craven Wilson,** )<br>      Petitioner, )<br> )<br>v. )<br> )<br>**J. Andrews,** )<br>      Respondent. ) | 1:20cv470 (RDA/MSN) |

**MEMORANDUM OPINION**

Thomas Craven Wilson, a federal inmate proceeding pro se, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 challenging the calculation of his good conduct time credits ("GCT") by the Bureau of Prisons ("BOP"). Respondent filed a motion to dismiss [Dkt. No. 11], with a brief in support, and provided petitioner with the notice required by Local Rule 7(K) and Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). [Dkt. Nos. 11, 12].[1] Petitioner has not filed a response and the matter is now ripe for adjudication. For the reasons stated below, respondent's motion to dismiss shall be granted, and the underlying petition dismissed.

**I.   Background**

On November 8, 2004, Wilson pleaded guilty in the United States District Court for the Western District of North Carolina to three counts of robbery affecting interstate commerce and one count of possession of a firearm during and in relation to a crime of violence. See United States v. Wilson, 1:04-cr-48-002, (Dkt. Nos. 26, 27) (hereinafter "Wilson I"). On March 13,

---

[1]   References to the current docket will be in brackets, [Dkt. No. __ ] and references to the docket of petitioner's criminal convictions will be in parentheses, (Dkt. No. __).

2006, Wilson was sentenced to a total of 171 months of incarceration for his convictions. Id., (Dkt. No. 50 at 2). Wilson completed his term of incarceration, and began a three-year term of supervised release, on July 8, 2016. Id.; (Dkt. No. 88 at 2).

In March 2019, almost three years after he had completed the sentence on his original convictions and while Wilson was on supervised release, the United States Probation Office alleged that he had violated the terms of his supervised release by selling marijuana, cocaine, hydrocodone, and MDMA, using drugs and alcohol, and engaging in unauthorized communications and/or interactions with persons engaged in criminal activity. On May 2, 2019, the district court found Wilson had violated the terms of his supervised release, revoked his supervised release, and sentenced him to an eighteen-month term of imprisonment. Id. Dkt. No. 98 at 2. The district court also imposed a period of twelve months of supervised release upon completion of his sentence. Id. at 3.

The First Step Act of 2018[2] became effective on July 19, 2019. Pursuant to the GCT provisions of the First Step Act, the Bureau of Prisons ("BOP") recalculated the amount of GCT to which Wilson was entitled and credited him with an additional fifty-four (54) days of GCT. The BOP also informed Wilson his projected release date was July 19, 2020. [Dkt. No. 1-1 at 6]. Wilson sought administrative review of that determination asserting that he was entitled to GCT for the period of incarceration that he had previously completed from his original criminal conviction (approximately 2004 through July 2016) and that those GCT credits should be applied to his current incarceration for his supervised release violation. The BOP rejected Wilson's

---

[2] See P.L. 115-391; 132 Stat. at 5213 § 102(b)(2) (providing the relevant provisions of the Act became effective upon the Attorney General's publication of the risks and needs assessment system).

request, concluding that although the First Step Act's GCT amendments were retroactive to sentences *imposed* before the promulgation of the statute, a prisoner was only entitled to GCT against a sentence that he was currently serving. [Dkt. No. 1-1 at 6-7].

On March 9, 2020, Wilson filed a "Motion to Reduce Sentence Under the First Step Act" in Wilson I. In that motion, citing 18 U.S.C. § 3624(b), Wilson stated that he had "asked the BOP to credit his current sentence with the good time he would have accumulated on his original sentence," but that the BOP had "denied" his request. The district court in Wilson I denied the motion holding that because Wilson was requesting a recalculation of his current sentence, it had to be filed as a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2241, in the district in which he was confined. Wilson I, (Dkt. Nos. 100-01); [Dkt. No. 1-1 at 1-4].

On April 24, 2020, Wilson filed the instant petition for writ of habeas corpus, reasserting the same argument rejected by the BOP – *i.e.,* that he should be awarded GCT for his original sentence in addition to the 54 days he was credited for his current sentence for the violating the terms of his supervised release and that additional GCT credits should be applied toward his "new revocation sentence." [Dkt. No. 1 at 7-8] ("I am entitled to 7 days per year of the 171 months that I was sentenced to be applied to my current revocation sentence.").

Pursuant to BOP's calculation of Petitioner's GCT credits pursuant to the First Step Act, petitioner was released from custody on July 17, 2020. REX 1 at 1.

## II. Standard of Review

A district judge may properly treat a motion to dismiss as a motion for summary judgment under Federal Rule of Civil Procedure 12, if "on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court." Fed. R. Civ. P. 12(d). Because respondent attached several documents to his motion, including a signed

3

declaration and portions of the disciplinary hearing record, his motion will be construed as one for summary judgment.³

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, the Court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of proving that judgment on the pleadings is appropriate. See Celotex Corp. v. Citrate, 477 U.S. 317, 323 (1986) (moving party bears the burden of persuasion on all relevant issues). To do so, the moving party must demonstrate that no genuine issues of material fact are present for resolution. Id. at 322. Once a moving party has met its burden to show that it is entitled to judgment as a matter of law, the burden shifts to the non-moving party to point out the specific facts that create disputed factual issues. Anderson v. Liberty Lobby. Inc., 477 U.S. 242, 248 (1986). In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold. Inc., 369 U.S. 654, 655 (1962). Those facts which the moving party bears the burden of proving are facts which are material. "[T]he substantive law will identify which facts are material. Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. An issue of material fact is genuine when, "the evidence . . . create[s] [a] fair doubt; wholly speculative assertions will not suffice." Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985). Thus, summary judgment is appropriate only where no material facts are genuinely disputed and the evidence as a whole could not lead a rational fact finder to rule for the non-

---

³ In support of his Motion for Summary Judgment, Respondent submitted Respondent's Exhibit 1, which includes the BOP's GCT credit calculations and Wilson's sentence summary.

moving party. Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The facts alleged in the petition and relied upon by respondent in his brief in support are not in dispute.

### III. Analysis

To obtain habeas relief under § 2241, a petitioner must demonstrate that he is being detained in federal custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Here, Wilson asserts he should have been awarded GCT credits based upon his original sentence (approximately 100 days) in addition to the 54 days he was credited for his current sentence for the violating the terms of his supervised release and that the additional GCT credits should have been applied toward his "new revocation sentence." Respondent asserts that since Wilson has been released this matter is moot and that even if Wilson were entitled to the GCT credits for the original sentence that GCT credits cannot be used to reduce a term of supervised release.

*A. Mootness*

A case becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'" Leonard v. Hammond, 804 F.2d 838, 842 (4th Cir. 1986) (quoting Murphy v. Hunt, 455 U.S. 478, 481 (1982)). "Mootness has been described as 'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'" Townes v. Jarvis, 577 F.3d 543, 546 (4th Cir. 2009) (quoting Arizonans for Official English v. Arizona, 520 U.S. 43, 68 (1997)). Thus, for a controversy to be moot, it must lack at least one of the three required elements of Article III standing: (1) injury in fact, (2) causation, or (3) redressability. Id. at 546 – 47 (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61

5

(1992)).

There are two exceptions to dismissal under the mootness doctrine: (1) the existence of collateral consequences; and (2) cases which are capable of repetition, yet evading review. Leonard, 804 F.2d at 842 (internal quotations omitted). First, if petitioner can demonstrate that a collateral consequence in the form of "some concrete and continuing injury other than the now-ended incarceration" remains, the case is not moot. Spencer v. Kemna, 523 U.S. 1, 8 (1998). Second, the "capable of repetition yet evading review" exception is satisfied when the challenged action is too brief in duration to be fully litigated before it ends or expires, and there is a reasonable expectation that the complaining party would be subjected to the same action again. Leonard, 804 F.2d at 842.

Where, as here, a petitioner is released from custody after filing a § 2241 application, the petition is not *ipso facto* rendered moot. Instead, the inquiry focuses on whether the court nonetheless can grant petitioner the relief he requests. Salgado v. Fed. Bureau of Prisons, 220 Fed. Appx. 256, 257 (5th Cir. 2007). In this case, Wilson contends that the BOP miscalculated his GCT credits, and as relief he seeks earlier release from incarceration from the sentence he is serving for violating his prior term of supervised release or a reduced term of supervised release.

Since Wilson is no longer in prison, however, his request for earlier release has been rendered moot. Id. at 256-57 (dismissing appeal from district court's order dismissing § 2241 petition as moot where petitioner sought reduction in prison term and was released from prison while appeal was pending); see also, Bailey v. Sutherland, 821 F.2d 277, 278 (5th Cir. 1987) (holding that appeal from denial of § 2241 application based on alleged loss of good time credits was moot where "[t]he main thrust" of petitioner's argument was to be released from confinement,

6

so when petitioner was released court "could no longer provide him with that relief"); Belasco v. Warden, 156 Fed. Appx. 671 (5th Cir. 2005) (holding that issues raised on appeal regarding calculation of good time credits were mooted by petitioner's release from BOP custody).

Although Wilson remains on supervised release, even if Wilson's claim for additional GCT were meritorious and he actually served more time in custody than he should have due to BOP miscalculations, excess prison time cannot offset and reduce a term of supervised release. United States v. Johnson, 529 U.S. 53, 59 (2000); see United States v. Jackson, 952 F.3d 492, 498 (4th Cir. 2020) ("when a defendant's term of incarceration is partially vacated, the overserved time does not shorten his term of supervision."); Palacio v. Sullivan, 2020 U.S. App. LEXIS 24503, *1 (4th Cir. 2020) (dismissing appeal as moot because "[o]verserved prison time does not shorten a defendant's term of supervision.") (citing Johnson, 529 U.S. at 59). Because granting relief on Wilson's claim thus could not shorten his term of supervised release, his supervision is not a collateral consequence that would maintain his claim's justiciability. See Crawford v. Booker, 2000 U.S. App. LEXIS 21152, *6 (10th Cir. 2000) (finding appeal moot because even though petitioner was presently serving a three-year term of supervised release, which he asserted could be reduced to reflect an earlier prison release date, Johnson held that the length of a supervised release term could not be reduced "by reason of excess time served in prison"); see also Baxter v. Young, No. 5:19-cv-00261, 2019 U.S. Dist. LEXIS 230806, *17-18 (S.D. W. Va. Dec. 8, 2019) adopted by, 2020 U.S. Dist. LEXIS 85283 (S.D. W. Va., May 13, 2020) ("As Baxter has been released from custody, his claim that the BOP erred in calculating his release date is moot, given that, even if his argument is correct, there would be no effect on his term of supervised release and the only relief which Baxter could be granted, release from prison, he has already received.").

Any possible effect Wilson's claim might have if his supervised release is revoked in the future is too speculative to qualify as a collateral consequence.   Spencer, 523 U.S. at 12.

    B.   *United States v. Venable*, 943 F.3d 187 (4th Cir. 2019)

Wilson's reliance on Venable, 943 F.3d 187 (4th Cir. 2019), as the primary basis for his petition is misplaced.   In 1997, Venable was sentenced to imprisonment, followed by a term of supervised release ("TSR"), for a drug trafficking crime.   Id. at 189.   Subsequently, § 2 of the Fair Sentencing Act of 2010, Pub. L. No. 111- 220, 124 Stat. 2372, amended the statute Venable was convicted of violating by changing when its statutory minimum penalties applied to Venable's crime.   Venable, 943 F.3d at 188-89.   Had Venable committed his crime after the enactment of the Fair Sentencing Act of 2010, his offense would have been classified as a lesser felony, reducing his statutory penalties.   Id. at 190, 193.

However, Section 404(b) of the FSA enacted on December 21, 2018 granted a sentencing court discretion to resentence a defendant as though § 2 of the Fair Sentencing Act of 2010 "were in effect at the time [a] covered offense was committed."   Pub. L. 115-391, 132 Stat. 5194, 5222.   A "covered offense" is a violation of a "statute, the statutory penalties for which were modified by" § 2 of the Fair Sentencing Act of 2010.   Id. § 404(a).

After enactment of the FSA, Venable was serving a prison term after his TSR was revoked on his underlying drug trafficking crime.   Venable, 943 F.3d at 190.   The district court denied Venable's motion for a sentence reduction under § 404 of the FSA because it found it did not have the authority to reduce a sentence on a supervised release revocation.   Id.   On appeal, the Fourth Circuit held that the district court had the authority under the FSA to consider reducing Venable's sentence, finding that "custodial and supervised release terms [were] components of one unified

8

sentence." Id. at 193-94 (quoting United States v. Ketter, 908 F.3d 61, 65 (4th Cir. 2018)); see United States v. Jackson, 952 F.3d 492, 498 (4th Cir. 2020) ("Although custodial and supervised release terms are components of one unitary sentence, they serve different purposes. The conditions of a defendant's supervised release are intended to provide the defendant with assistance in transitioning into community life." (internal citation omitted)). .

Under the "unitary sentence framework," the Fourth Circuit saw the "revocation sentence [a]s a component of his underlying original sentence for the drug conviction." Id. Accordingly, Venable was "still serving his sentence for a 'covered offense' for purposes of the [FSA and] the district court had the authority to consider his motion for a sentence reduction, just as if he were still serving the original custodial sentence." Id. at 194.

Wilson attempts to analogize his situation to Venable and contends that § 102 of the FSA should also have a retroactive effect on petitioner's current TSR revocation prison term. This argument ignores the significant differences between § 404 and § 102 of the FSA, which render Venable inapposite for several reasons.

First, § 404 gives explicit authorization for retroactive application of the Fair Sentencing Act of 2010. See § 404(b), 132 Stat. 5194, 5222. As such, its application to a prison term resulting from a TSR revocation does not seem incongruous with its text, in contrast with § 102.

Second, the Fair Sentencing Act of 2010 changed when certain mandatory minimum punishments applied under subsections 21 U.S.C. § 841(b)(1)(A) and 841(b)(1)(B). Pub. L. No. 111-220, § 2(a), 124 Stat. 2372. These mandatory minimum punishments include TSR lengths. (See 21 U.S.C. § 841(b)(1)(A), (b)(1)(B)) (mandating minimum TSR lengths of four, five, eight, or ten years). Accordingly, § 404 would still accomplish its purpose in mitigating potentially

9

harsh sentences when applied to a prisoner serving a TSR revocation prison term.

Third, § 404 merely gives a court authorization to reduce a sentence in its discretion. See § 404(b), 132 Stat. 5194, 5222 ("A court ... may, on motion ... impose a reduced sentence ...."); see also Venable, 943 F.3d at 194 ("We emphasize that our holding today is limited to the issue of a district court's authority to resentence a defendant serving a term of imprisonment for revocation of supervised release .... We offer no opinion on whether Venable is entitled to a reduction of his revocation sentence."). Thus, § 404 allows courts to mitigate sentences judiciously, for the most deserving inmates. On the other hand, since § 102 is not discretionary, it applies to all imprisoned TSR violators, irrespective of penological impact. These differences all emphasize why Venable's reasoning does not comport with Wilson's position.

The courts that have already confronted Wilson's argument have flatly rejected it. Like Wilson, the petitioner in Barkley v. Dobbs challenged his supervised release revocation prison term, alleging that he was due GCT credits under § 102 of the FSA. Barkley, No. 1:19-3162, 2019 U.S. Dist. LEXIS 206287 *6 (D.S.C. Nov. 12, 2019), adopted by, No. 1:19-3162, 2019 U.S. Dist. LEXIS 204837 (D.S.C. Nov. 25, 2019). The district court disagreed, noting that "the imprisonment that ensues from revocation is partly based on new conduct, is wholly derived from a different source, and has different objectives altogether; it is therefore a different beast." Id. at *7-8 (quoting United States v. McNeil, 415 F.3d 273, 277 (2d Cir. 2005). Barkley also cited a regulation governing federal parole:

> Once an offender is conditionally released from imprisonment, either by parole or mandatory release, the good time earned during that period of imprisonment is of no further effect either to shorten the period of supervision or to shorten the period of imprisonment which the offender may be required to serve for violation of parole or mandatory release.

Id. (quoting 28 C.F.R. § 2.35(b)).

The district court in Garland v. Johnson also confronted a habeas petitioner who argued that § 102 of the FSA allowed for recalculated GCT credits to apply to his TSR or "any future imprisonment [he] may be required to serve for violating the conditions of his release."  Garland v. Johnson, No. 1:19-53, 2019 U.S. Dist. LEXIS 177527 at *2 (W.D. La. Aug. 12, 2019), adopted by, 2019 U.S. Dist. LEXIS 177503 (W.D. La., Oct. 10, 2019).  The district court held that

> even if Garland had been entitled to additional good time credit toward his sentence that he did not receive, federal law provides that those credits could not be used either to shorten the period of his supervised release or to shorten the period of any future imprisonment Garland may be required to serve for violating the conditions of his release.  28 C.F.R. § 2.35(b); see United States v. Johnson, 529 U.S. 53, 60 (2000) (holding that the length of a supervised release term may not be reduced by reason of excess time served in prison); Bailey v. Southerland, 821 F.2d 277, 278-79 (5th Cir. 1987).

Id. at 2-3; see Kieffer v. Rios, No. 19cv0899, 2019 U.S. Dist. LEXIS 143422 (D. Minn. Aug. 23, 2019) (petitioner's assertion that the BOP should have recalculated his good-conduct time by aggregating his original 99-month sentence and his present 24-month sentence fails as a matter of law" because "a revocation sentence is separate and distinct from the original underlying sentence for purposes of calculating good-conduct time."); aff'd, 2019 U.S. App. LEXIS 39171 (8th Cir. 2019).[4]   See also Johnson, 529 U.S. at 60 ("The objectives of supervised release would

---

[4]  Several other courts have also rejected Wilson's argument and found that an inmate serving a sentence for violating the conditions of his TSR is not entitled to GCT credit for both the original term of incarceration and the current sentence for violating the conditions of his TSR.  See, e.g., Smith v. Williams, No. 4:19cv02819, 2020 U.S. Dist. LEXIS 110487, *7-8 (N.D. Ohio June 8, 2020), adopted by, 2020 U.S. Dist. LEXIS 110484 (N.D. Ohio, June 24, 2020); Parks v. Warden, No. 1:20cv437, 2020 U.S. Dist. LEXIS 86587 *5-6 (M.D. Pa. May 18, 2020) (BOP "acted properly in declining to apply the [First Step Act's] new good-time-credit calculation to [Petitioner's] term[] of imprisonment that had already concluded before the effective date of the statute."); Beal v. Kallis, No. 19cv3093 (DSD/HB), 2020 U.S. Dist. LEXIS 28896 *5 (D. Minn. Jan. 7, 2020) (concluding that the moment the prior term of imprisonment ended was also the moment that petitioner became ineligible for additional good-time credit resulting from that term

be unfulfilled if excess prison time were to offset and reduce terms of supervised release."); Boniface v. Carlson, 881 F.2d 669, 671-72 (9th Cir. 1989) ("The courts have uniformly ... held that good time, both statutory and extra or industrial good time, earned during the original incarceration does not survive a parole release and cannot be credited upon a parole violator's sentence."); Bailey, 821 F.2d at 278-79 ("[T]he good time of one confinement does not carry over to a second confinement."); Boling v. Langford, No. CV 18-05677-ODW, 2018 U.S. Dist. LEXIS 220358 *9 (C.D. Cal. Nov. 30, 2018), adopted by, 2019 U.S. Dist. LEXIS 14992 (C.D. Cal., Jan. 30, 2019) (any good time credits earned during the original incarceration did not survive inmates release on parole and cannot later be applied to reduce a parole violator's post-violation incarceration); Crum v. United States, 672 F. Supp. 2d 1, 2 (D.D.C. 2009) ("good conduct credits evaporate once parole is granted, and begin anew from zero when a prisoner's parole is revoked"); Racine v. Fed. Bur. of Prisons, No. 07-1834, 2007 U.S. Dist. LEXIS 39399, *16 (D.N.J. May 31, 2007) ("While supervised release is imposed as part of the original sentence, any incarceration ensuing from the revocation of supervised release is generally based on new conduct, and 'is wholly derived from a different source, and has different objectives altogether; it is therefore a different beast.'" (citation omitted)).

The courts that have rejected Wilson's argument have acted consistently with the Fourth Circuit's recent decision interpreting Johnson. In Jackson, the Fourth Circuit found that the district court did not abuse its discretion when it reduced a sentence to time served and eight years

---

of imprisonment and BOP "acted properly in declining to apply the FSA's new good-time-credit calculation to terms of imprisonment that had already concluded before the effective date of the statute."), adopted by, 2020 U.S. Dist. LEXIS 28142 (D. Minn. Feb. 19, 2020); Jamison v. Warden, Elkton Fed. Corr. Inst., No. 1:19cv789, 2019 U.S. Dist. LEXIS 190981 (S.D. Ohio Nov. 4, 2019), adopted by, 2019 U.S. Dist. LEXIS 214532 (S.D. Ohio Dec. 12, 2019).

of supervised release and denied his request for a reduction below time served that would have allowed the defendant to "bank time for credit against future supervised release violations." Jackson, 952 F.3d at 502.  Jackson's analysis reviewed the instances in which the question of banked time had arisen, id. at 497-98 and observed that the Supreme Court had "held that when a defendant's term of incarceration is partially vacated, the overserved time does not shorten his term of supervision."  Id. at 498 (citing Johnson, 529 U.S. at 54).  Jackson noted that even though custodial and supervised release terms are components of one unitary sentence they serve different purposes and that the rehabilitative purposes of supervised release, which are intended to provide the defendant with assistance in transitioning into community life, would be unfulfilled if excess prison time were to offset and reduce terms of supervised release.  Jackson, 952 F.3d at 498 (discussing Johnson, 529 U.S. at 54, 58-59).  Jackson's discussion of Johnson is consistent with the analysis of the numerous courts that have rejected Wilson's argument for additional GCT to reduce his TSR.  In sum, Johnson prohibits reduction of a TSR, whether through the use of overserved time or additional GCT, and that renders Wilson's §2241 habeas petition moot.

## IV. Conclusion

For the foregoing reasons, respondent's Motion to Dismiss [Dkt. No. 11] is granted, and this petition must be dismissed with prejudice.  An appropriate Order and judgment shall issue.

Entered this 5 day of October 2020.

Alexandria, Virginia

/s/
Rossie D. Alston, Jr.
United States District Judge

14